Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL VII

| | | |
|---|---|---|
| SUPER ASPHALT PAVEMENT CORP. Y OTROS<br><br>*Peticionarios*<br><br>v.<br><br>TALLABOA PR, LLC Y OTROS<br><br>*Recurridos* | TA2026CE00590 | *Certiorari*<br>procedente del Tribunal de Primera Instancia, Sala Superior de Bayamón<br><br>Caso Núm.:<br>BY2025CV06164<br><br>Sobre:<br>Cobro de Dinero-Ordinario y otros |
| TALLABOA PR, LLC Y OTROS<br><br>*Recurridos*<br><br>v.<br><br>SUPER ASPHALT PAVEMENT CORP. Y OTROS<br><br>*Peticionarias* | | Consolidado con Caso Núm.:<br>BY2025CV06574<br><br>Sobre:<br>Cobro de Dinero-Ordinario y otros |

Panel integrado por su presidente, el Juez Rodríguez Casillas, la Juez Barresi Ramos y la Jueza Santiago Calderón

Santiago Calderón, Jueza Ponente

## RESOLUCIÓN

En San Juan, Puerto Rico, a 24 de junio de 2026.

Comparece ante nos Super Asphalt Pavement Corp. (Super Asphalt) y Asphalt Solutions Toa Alta, LLC (AST) (en conjunto, peticionarios) mediante recurso de *Certiorari* y solicitan que revoquemos la *Resolución y Orden*[1] emitida y notificada el 1 de mayo de 2026 por el Tribunal de Primera Instancia, Sala Superior de Bayamón (TPI o foro recurrido). Mediante el referido dictamen, el TPI declaró *Ha Lugar* la *Moción Solicitando Embargo Preventivo en Aseguramiento de Sentencia contra Super Asphalt y AST*[2] presentada

---

[1] Apéndice 77 del recurso de *Certiorari*.
[2] Entrada núm. 32 del expediente del Tribunal de Primera Instancia (TPI) del caso núm. BY2025CV06574.

por Tallaboa PR, LLC (Tallaboa) y su presidente, el señor Juan Vázquez Donis (señor Vázquez Donis) (en conjunto, recurridos).

Por los fundamentos que expondremos a continuación, **denegamos** el recurso de epígrafe.

**I.**

El caso de autos tuvo su génesis el 21 de noviembre de 2025, cuando Super Asphalt y AST instaron una *Demanda*[3] sobre pago de lo indebido en contra de Tallaboa, en el caso número BY2025CV06164. En la misma, alegaron que habían suscrito con los recurridos un *Forbearance Agreement*[4] para pagar a plazos la deuda que tenían con Tallaboa[5]. Asimismo, arguyeron que el pago era de trescientos mil dólares ($300,000.00) mensuales o el cuarenta por ciento (40%) del ingreso neto mensual, lo que resultara menor. Además, esgrimieron que hicieron pagos mensuales de trescientos mil dólares ($300,000.00) sin aplicar la fórmula del cuarenta por ciento (40%), por lo que habían hecho pagos en exceso por un total de un millón setecientos ochenta y nueve mil seiscientos veintinueve dólares con sesenta centavos ($1,789,629.60), cantidad que solicitó que los recurridos les devolvieran, más intereses, costas, gastos y honorarios de abogado. Tallaboa sometió su *Contestación a la Demanda*[6] en cuanto a este caso el 6 de febrero de 2026, en la cual negó las alegaciones.

De igual manera, el 19 de diciembre de 2025, los recurridos instaron una *Demanda*[7] en el caso número BY2025CV06574 sobre cobro de dinero e incumplimiento de contrato en contra de Super Asphalt, AST y su aseguradora, Mapfre. Allí, argumentaron que el

---

[3] Apéndice 1 del recurso de *Certiorari.*
[4] *Íd.*, Anejo *Forbearance Agreement.*
[5] Super Asphalt y AST acumularon una deuda con Tallaboa por concepto del asfalto suplido. Para marzo de 2024, Super Asphalt y AST le adeudaban nueve millones seiscientos treinta y un mil cuatrocientos cinco dólares ($9,631,405.00) a Tallaboa. La existencia de esta deuda fue estipulada por las partes y no está en controversia.
[6] Entrada núm. 9 del expediente del TPIdel caso núm. BY2025CV06164.
[7] Entrada núm. 1 del expediente del TPI del caso núm. BY2025CV06574.

*Forbearance Agreement* fue posteriormente enmendado, eliminándose la fórmula del cuarenta por ciento (40%) y se mantuvo pagos fijos de trescientos mil dólares ($300,000.00) mensuales. De igual forma, adujeron que, los peticionarios dejaron de realizar los pagos, por lo cual incumplieron con el contrato entre las partes, por lo que solicitaron el pago de cuatro millones quinientos treinta y un mil cuatrocientos cinco dólares con cincuenta y un centavos ($4,531,405.51).

Tras varios incidentes procesales, el 6 de marzo de 2026, los recurridos sometieron una *Moción Solicitando Embargo Preventivo en Aseguramiento de Sentencia contra Super Asphalt y AST*. En la misma, esgrimieron el incumplimiento del acuerdo de pago previamente estipulado y que, en perjuicio del cobro de la deuda, los peticionarios disipaban sus activos mediante pagos a Petroleum Products Supply, LLC. (Petroleum Products). Asimismo, sostuvieron que el remedio era necesario para garantizar la efectividad de una futura sentencia e invocaron la Regla 56 de las de Procedimiento Civil, *infra.* Finalmente, solicitaron que se les relevara de prestar fianza por tratarse de una deuda respaldada por documentos fehacientes.

En respuesta, el 16 de marzo de 2026, Super Asphalt y AST presentaron su *Oposición a Moción Solicitando Remedios Provisionales en Aseguramiento de la Sentencia*[8]. Allí, adujeron que el embargo preventivo debía denegarse debido a que la alegada deuda no era líquida ni exigible y dependía del flujo de efectivo dispuesto en los acuerdos. Además, sostuvieron que existían litigios previos relacionados que incluyen reclamaciones por pagos en exceso y fraude, por lo que el caso debía consolidarse con otros pleitos pendientes. También, alegaron que la solicitud era

---

[8] Entrada núm. 36 del expediente del TPI del caso núm. BY2025CV06574.

prematura porque aún no habían contestado la *Demanda* ni presentado sus defensas afirmativas, y que no existía evidencia de insolvencia ni de disipación fraudulenta de activos que justificara el remedio extraordinario solicitado.

Así las cosas, el 25 de marzo de 2026, los peticionarios sometieron su *Contestación a Demanda y Reconvención*[9].

El 27 de marzo de 2026, a solicitud de Tallaboa[10] y con la aprobación de los peticionarios, el TPI ordenó la consolidación de los casos BY2025CV06164 y BY2025CV06574[11]. Además, señaló vista sobre remedios en aseguramiento de sentencia para el 30 de abril de 2026[12].

Por su parte, el 20 de abril de 2026, Mapfre presentó *Contestación a la Demanda, Demanda Contra Coparte y Demanda Contra Terceros*[13]. En ésta, arguyó que los indemnizadores se obligaron solidariamente a depositar de manera colateral la cantidad que entendiera suficiente para cubrir cualquier pérdida anticipada tan pronto así lo requiera. Planteó que la *Demanda* de Tallaboa activó automáticamente las obligaciones solidarias de los indemnizadores hacia ellos bajo los *Agreements of Indemnity*. Por lo cual, se les requería la entrega solidaria de la cantidad de cuatro millones quinientos treinta y un mil cuatrocientos cinco dólares con cincuenta y un centavos ($4,531,405.51), para ser retenida para indemnizar a esa aseguradora por todos los gastos, costas y cualquier pérdida en que incurriera como consecuencia de la emisión de fianzas a nombre de los peticionarios.

Días más tarde, el 27 de abril de 2026, los recurridos sometieron una moción en la cual esbozaron que su solicitud de embargo preventivo en aseguramiento de sentencia no afectaba la

---

[9] Entrada núm. 40 del del expediente del TPI del caso núm. BY2025CV06574.
[10] Entrada núm. 20 del expediente del TPI del caso núm. BY2025CV06164.
[11] Apéndice 26 del recurso de *Certiorari*.
[12] Apéndice 29 del recurso de *Certiorari*.
[13] Entrada núm. 58 del expediente del TPI del caso núm. BY2025CV06574.

reclamación de Mapfre. Esto, debido a que primero se debía hacer excusión de los bienes de Super Asphalt y AST.

Llegado el día de la vista sobre embargo preventivo en aseguramiento de sentencia, comparecieron las partes de epígrafe. Tallaboa presentó como testigo a su presidente, el señor Vázquez Donis, mientras que, los peticionarios presentaron como testigo al señor Dalton Sargeant, presidente de Super Asphalt. Además, se admitió la siguiente prueba documental:

Prueba admitida y marcada como Exhibits de Tallaboa:

1. *Forbearance Agreement* de 27 de marzo de 2024
2. *Amended and Restated Forbearance Agreement* de 19 de marzo de 2025.
3. Cuentas por cobrar de Tallaboa respecto a SA
4. *Subordination Agreement and Payment Plan* de 18 de marzo de 2024
5. Comunicaciones de Tallaboa a SA.
6. *Forbearance Agreement and Release of Guarantees of Certain Guarantors* de 27 de marzo de 2024.
7. *Stock Purchase Agreement* de 20 de febrero de 2024.
8. *Vendor Ledger*, estado de cuenta de SA con Tallaboa.
9. *Vendor Ledger Super Accounts*, resumen del estado de cuenta de SA con Tallaboa.
10. Correos electrónicos sobre DD Findings.

Prueba admitida y marcada como Exhibits de SA:

1. Planilla de contribución sobre ingresos auditada de SA correspondiente al año 2024, con estados financieros auditados.
2. 2024 SA *Consolidated Financial Statements.*
3. *Consolidated SA Paving Corp. Tallaboa PR Payment Plan Payments*[14].

Evaluada la totalidad de la prueba, el foro recurrido realizó las siguientes determinaciones de hechos:

1. Tallaboa es una entidad jurídica debidamente constituida bajo las leyes del Estado Libre Asociado de Puerto Rico, con oficinas principales en Guaynabo.

2. Tallaboa se dedica a actividades de importación y venta de asfalto en Puerto Rico, y opera un terminal para la importación de este tipo de producto, ubicado en el Municipio de Peñuelas.

3. Super Asphalt Pavement Corp. (en adelante "SAPC") es una entidad debidamente incorporada bajo las leyes de Puerto Rico, con oficinas principales en Guaynabo, que se dedica a actividades relacionadas con la construcción.

4. Asphalt Solutions Toa Alta, LLC (en adelante "AST") es similarmente una entidad organizada bajo las leyes de Puerto Rico, dedicada a actividades relacionadas con la

---

[14] Apéndice 77 del recurso de *Certiorari*, págs. 3-4.

industria de la construcción, que tiene sus oficinas en Guaynabo.

5. AST es una subsidiaria de SAPC.

6. Durante los años 2022 a 2025, Tallaboa suplió productos de asfalto a SA, que fueron empleados en diversos proyectos de construcción a través de la Isla, por lo que se ha mantenido una deuda que al 1ro de diciembre de 2025, totalizaba de $4,531,405.51 por concepto de asfalto vendido y que no ha sido pagado. Dicha suma está siendo reclamada por Tallaboa en el pleito ante nos.

7. Para asistir a que SAPC y AST pudieran pagar sus deudas, el 20 de febrero de 2024, ambas empresas junto con Tallaboa otorgaron un *Forbearance Agreement* el 27 de marzo de 2024, con vigencia de un (1) año.

8. De conformidad con el *Forbearance Agreement*, SA se comprometió a realizar pagos mensuales para abonar a su deuda con Tallaboa. Los pagos mensuales eran por la cantidad de $300,000.00 o por el 40% de sus ingresos netos mensuales, lo que resultara menor.

9. El 19 de marzo de 2025, las partes suscribieron un Amended and Restated Forbearance Agreement con vigencia de un (1) año. Mediante ese acuerdo enmendado, se modificó el pago mensual a $300,000.00 fijos, eliminando la posibilidad de pagar el 40% del ingreso neto de SA.

10. MAPFRE, como garantizadora de la obligación, dio su consentimiento para el cambio en la fórmula del pago mensual.

11. SAPC y AST hicieron varios de los pagos acordados, pero incumplieron los términos a los que se habían obligado. Por ejemplo, no pagaron durante el mes de noviembre de 2025 y tampoco realizaron pagos en agosto de 2025.

12. Tallaboa notificó a SAPC, AST y MAPFRE sobre el incumplimiento con el acuerdo, y reclamó el pago de la totalidad de la obligación.

13. SAPC y AST han alegado que no han realizado los pagos por falta de capital suficiente. No obstante, durante el período en que estuvo vigente el Forbearance Agreement y su enmienda, ambas entidades desviaron sobre $32,000,000 a favor de una empresa que guarda relación y pertenece al mismo grupo corporativo de su accionista mayoritario. Así surgió del Exhibit 2 de SA donde consta esta partida como "account payable to related party", que es una empresa denominada PPS, también relacionada con SA.

14. Al presente SA no ha realizado pagos adicionales para abonar a la deuda con Tallaboa[15].

En vista de lo anterior, el TPI declaró *Ha Lugar* la *Moción Solicitando Embargo Preventivo en Aseguramiento de Sentencia contra Super Asphalt y AST* presentada por los recurridos. Por consiguiente, ordenó el embargo preventivo de los bienes de los

---

[15] *Íd.*, págs. 4-6.

peticionarios, por la cantidad de cuatro millones quinientos treinta y un mil cuatrocientos cinco dólares con treinta y un centavos ($4,531,405.31). Además, le ordenó a Tallaboa el pago de una fianza por tres millones quinientos mil dólares ($3,500,000.00) en un término de quince (15) días laborables.

Tras el foro recurrido emitir la orden de embargo, el mandamiento y Tallaboa someter la fianza impuesta[16], el 8 de mayo de 2026, Super Asphalt y AST sometieron una moción en la cual solicitaron la paralización del diligenciamiento del mandamiento del embargo preventivo[17]. Analizada tal solicitud, el 9 de mayo de 2026[18], el TPI emitió una *Resolución*[19] en la cual declaró *No Ha Lugar* la reconsideración presentada por los peticionarios.

Insatisfechos aun, el 11 de mayo de 2026, Super Asphalt y AST acudieron ante este foro intermedio mediante el recurso de epígrafe y le imputaron al foro recurrido los siguientes señalamientos de error:

> 1. ERRÓ EL TPI AL ORDENAR EL EMBARGO DE BIENES MUEBLES E INMUEBLES DE LAS PETICIONARIAS POR LA SUMA DE $4,531,405.31, SIN REALIZAR EL ANÁLISIS DE RAZONABILIDAD Y PROPORCIONALIDAD QUE EXIGE LA REGLA 56, Y SIN CONSIDERAR EL IMPACTO SUSTANCIAL DE DICHO REMEDIO SOBRE LAS OPERACIONES Y LOS INTERESES LEGÍTIMOS DE LAS PETICIONARIAS.

> 2. ERRÓ EL TPI AL ORDENAR EL EMBARGO DE BIENES MUEBLES E INMUEBLES DE LAS PETICIONARIAS POR LA SUMA DE $4,531,405.31, TODA VEZ QUE, CONFORME A LA RELACIÓN CONTRACTUAL VIGENTE ENTRE LAS PARTES, LA ALEGADA DEUDA NO ERA EXIGIBLE, POR LO QUE EL REMEDIO CONCEDIDO NO ERA RAZONABLE NI ADECUADO.

> 3. ERRÓ EL TPI AL CONCEDER UN REMEDIO EN ASEGURAMIENTO DE SENTENCIA SIN LA COMPARECENCIA DE LAS PARTES INTERESADAS, QUIENES RESULTAN DIRECTAMENTE AFECTADAS POR EL EMBARGO ORDENADO.

---

[16] Véase, Apéndice 78, 82 y 83 del recurso de *Certiorari*,
[17] Apéndice 85 del recurso de *Certiorari*, *Moción Urgente Solicitando Paralización del Diligenciamiento del Mandamiento, o en la alternativa, que se deje sin efecto hasta tanto transcurra el término concedido a SAP y ASTA para prestar contrafianza.*
[18] Notificada el 11 de mayo de 2026.
[19] Entrada núm. 87 del expediente del TPI del caso núm. BY2025CV06164.

En igual fecha, los peticionarios sometieron una *Urgente Moción en Auxilio de Jurisdicción*[20] en la cual arguyeron que la paralización era indispensable para evitar que un remedio concedido en error produjera consecuencias irreversibles. Evaluado el petitorio, el 14 de mayo de 2026, emitimos y notificamos una *Resolución*[21] en la cual declaramos *Ha Lugar* el Auxilio de Jurisdicción presentado por Super Asphalt y AST. De igual forma, le concedimos a los recurridos un término de diez (10) días para que mostraran causa por la cual no se debía expedir el recurso presentado.

A tales fines, el 22 de mayo de 2026, Tallaboa sometió *Moción en Cumplimiento de Orden y Oposición a Solicitud de Certiorari*[22]. En la misma, argumentaron que el embargo preventivo fue correctamente concedido debido a que los peticionarios mantenían una deuda líquida, vencida y exigible de más de cuatro punto cinco ($4.5) millones, incumplieron el plan de pago acordado y existía riesgo de que no pudieran cobrar una eventual sentencia debido al desvío de activos a una entidad relacionada, Petroleum Products. Además, sostuvieron que el TPI no abusó de su discreción y que la deuda estaba claramente determinada.

Con el beneficio de la comparecencia de ambas partes, procedemos a resolver.

## II.

### -A-

El auto de *certiorari* constituye un vehículo procesal discrecional que permite a un tribunal de mayor jerarquía revisar las determinaciones de un tribunal inferior[23]. La determinación de

---

[20] Entrada núm. 2 del expediente del Tribunal de Apelaciones (TA).
[21] Entrada núm. 4 del expediente del TA.
[22] Entrada núm. 9 del expediente del TA.
[23] Véase, *Torres González v Zaragoza Meléndez*, 211 DPR 821 (2023); *800 Ponce de León v. AIG*, 205 DPR 163, 174 (2020); *IG Builders et al. v. BBVAPR*, 185 DPR 307, 337-338 (2012); *García v. Padró*, 165 DPR 324, 334-335 (2005); *Negrón v. Srio. de Justicia*, 154 DPR 79, 90-92 (2001).

expedir o denegar este tipo de recursos se encuentra enmarcada dentro de la discreción judicial[24]. De ordinario, la discreción consiste en "una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera"[25]. Empero, el ejercicio de la discreción concedida "no implica la potestad de actuar arbitrariamente, en una u otra forma, haciendo abstracción del resto del derecho"[26].

La Regla 40 del Reglamento del Tribunal de Apelaciones[27], establece los criterios que este foro debe tomar en consideración al entender o no en los méritos los asuntos planteados mediante un recurso de *certiorari.* La aludida regla dispone lo siguiente:

> (A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
>
> (B) Si la situación de hechos planteada es la más indicada para el análisis del problema.
>
> (C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
>
> (D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
>
> (E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.
>
> (F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.
>
> (G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

Un *certiorari* solo habrá de expedirse si al menos uno de estos criterios aconseja la revisión del dictamen recurrido. Es decir, el ordenamiento impone que ejerzamos nuestra discreción y evaluemos si, a la luz de alguno de los criterios contenidos en la misma, se requiere nuestra intervención.

En lo pertinente a este caso, el *certiorari* también es el recurso

---

[24] *Íd.*

[25] *Medina Nazario v. McNeil Healthcare LLC,* 194 DPR 723, 729 (2014); *Negrón v. Srio. de Justicia, supra,* pág. 91.

[26] *Íd.*

[27] 4 LPRA XXII-B, R. 40.

apropiado para solicitar la revisión de determinaciones postsentencia[28]. A esos efectos, el Tribunal Supremo expresó que:

> Las resoluciones atinentes a asuntos postsentencia no se encuentran comprendidas entre aquellas determinaciones de naturaleza interlocutoria categóricamente sujetas a escrutinio mediante el recurso de *certiorari*. De otra parte, por emitirse este tipo de decisión luego de dictada la sentencia, usualmente tampoco cualifica para el recurso de apelación provisto para dictámenes judiciales finales. Se corre el riesgo, por lo tanto, de que fallos erróneos nunca se vean sujetos a examen judicial simplemente porque ocurren en una etapa tardía en el proceso, tal como lo es la ejecución de sentencia[29].

**-B-**

La Regla 56 de las de Procedimiento Civil[30], establece los remedios provisionales que un demandante puede solicitar para asegurar la efectividad de una sentencia que ha obtenido a su favor o anticipa obtener. Para ello, antes o después de la sentencia, la parte reclamante podrá solicitarle al tribunal mediante moción aquel remedio que sea necesario para asegurar la efectividad de la sentencia[31]. Esta disposición otorga amplia discreción al Tribunal de Primera Instancia para conceder o denegar el remedio solicitado, con la exclusiva limitación de que la medida sea razonable y dirigida al propósito esencial de asegurar el cumplimiento del pronunciamiento de que trate[32].

Entre las medidas provisionales disponibles están "el embargo, el embargo de fondos en posesión de un tercero, la prohibición de enajenar, la reclamación y entrega de bienes muebles, la sindicatura, una orden para hacer o desistir de hacer cualesquiera actos específicos, o podrá ordenar cualquier otra medida que estime apropiada, según las circunstancias del caso"[33].

---

[28] *IG Builders et al. v. BBVAPR, supra,* pág. 339.
[29] *Íd.*
[30] 32 LPRA Ap. V, R. 56.1. *Banco Popular de Puerto Rico v. Gómez Alayón,* 213 DPR 314, 331 (2023).
[31] 32 LPRA Ap. V, R. 56.1.
[32] *F.D. Rich Co. v. Tribunal Superior,* 99 DPR 158, 176 (1970).
[33] 32 LPRA Ap. V, R. 56.1.

No obstante, nuestro estado de derecho reconoce que la anterior enumeración de remedios no constituye una lista taxativa pues el tribunal tiene discreción de ordenar cualquier otra medida que estime apropiada[34].

Por tanto, el tribunal está facultado para dictar cualquier orden provisional que intime apropiada y necesaria para asegurar la efectividad de la determinación que pudiese recaer[35]. No obstante, al resolver si procede, o no, el remedio que se le solicite, el ejercicio de la función judicial pertinente debe considerar los siguientes criterios: 1) que el remedio solicitado sea provisional; (2) que su objetivo sea asegurar la efectividad de la sentencia que en su día dicte el tribunal, y (3) que se consideren los intereses de todas las partes[36].

## III.

En el caso de autos, Super Asphalt y AST adujeron que el foro recurrido incidió al ordenar un embargo por la cantidad de cuatro millones quinientos treinta y un mil cuatrocientos cinco dólares con treinta y un centavos ($4,531,405.31) sin evaluar adecuadamente su razonabilidad y proporcionalidad ni considerar el impacto del remedio sobre sus operaciones. Además, alegaron que la deuda reclamada no era exigible conforme a los acuerdos contractuales vigentes entre las partes, por lo que el embargo era improcedente. Finalmente, argumentaron que el remedio fue concedido sin la comparecencia de partes interesadas cuyos derechos podrían verse afectados por la medida.

Por su parte, Tallaboa esgrimió que el embargo preventivo fue correctamente concedido debido a que los peticionarios mantenían una deuda líquida, vencida y exigible de más de cuatro punto cinco

---

[34] *Scotiabank de Puerto Rico v. ZAF Corporation*, 202 DPR 478, 489 (2019).
[35] *Citibank v. ACBI*, 200 DPR 724, 732 (2018).
[36] *Scotiabank de Puerto Rico v. ZAF Corporation, supra,* pág. 489.

($4.5) millones, incumplieron el plan de pago acordado y existía riesgo de que no pudieran cobrar una eventual sentencia debido al desvío de activos a una entidad relacionada, Petroleum Products. Además, sostuvieron que el TPI no abusó de su discreción y que la deuda estaba claramente determinada.

Examinados los escritos de las partes y los documentos que obran en el expediente, concluimos que no se justifica nuestra intervención con la determinación recurrida. La concesión de remedios provisionales en aseguramiento de sentencia al amparo de la Regla 56 de las de Procedimiento Civil, *supra*, constituye un asunto que descansa en la sana discreción del TPI, cuyas determinaciones merecen gran deferencia.

En el presente caso, el foro recurrido celebró una vista evidenciaria, evaluó prueba documental y testifical, e hizo determinaciones de hecho dirigidas a concluir que existía una deuda sustancial reclamada por los recurridos y que el remedio solicitado era necesario para asegurar la efectividad de una eventual sentencia. En esta etapa de los procedimientos, los peticionarios no han demostrado que el TPI haya actuado con prejuicio, parcialidad, abuso de discreción o error manifiesto al conceder el embargo preventivo.

Asimismo, las controversias planteadas en torno a la cuantía, exigibilidad y alcance de las obligaciones contractuales entre las partes constituyen asuntos estrechamente vinculados a los méritos del litigio, cuya adjudicación final le corresponde al foro recurrido.

En consecuencia, al no concurrir circunstancias que demuestren un fracaso de la justicia ni fundamentos suficientes para concluir que el TPI abusó de su discreción al conceder el remedio provisional solicitado, denegamos la expedición del auto solicitado.

**IV.**

Por los fundamentos antes expuestos, se ***deniega*** el recurso de *certiorari* solicitado. En consecuencia, se deja sin efecto la paralización de los procedimientos ante el Tribunal de Primera Instancia, Sala Superior de Bayamón dispuesta mediante la *Resolución* emitida el 14 de mayo de 2026 y se devuelve el caso al foro primario para la continuación de los procedimientos[37].

Notifíquese.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[37] Al amparo de la Regla 35 (A)(1) de nuestro Reglamento, el Tribunal de Primera Instancia puede proceder de conformidad con lo aquí resuelto, sin que tenga que esperar por nuestro mandato. La Regla 35 (A)(1) dispone: "La presentación de una solicitud de *certiorari* **no suspenderá los procedimientos ante el Tribunal de Primera Instancia, salvo una orden en contrario expedida por iniciativa propia o a solicitud de parte por el Tribunal de Apelaciones**. La expedición del auto de *certiorari* suspenderá los procedimientos en el Tribunal de Primera Instancia, salvo que el Tribunal de Apelaciones disponga lo contrario".